UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BUD MICHAEL FRASER, | |
| Petitioner, | CASE NO. C15-0973-JLR-MAT |
| v. | |
| BERNARD WARNER, | REPORT AND RECOMMENDATION |
| Respondent. | |

INTRODUCTION

Petitioner Bud Michael Fraser proceeds *pro se* in this habeas corpus matter pursuant to 28 U.S.C. § 2254.  In 2010, a jury convicted petitioner on First Degree Murder with a Firearm, and Snohomish County Superior Court sentenced him to 360 months confinement, followed by thirty-six months community custody.  (Dkt. 15, Ex. 1.)

Petitioner raises four grounds for relief in his habeas petition.  (Dkt. 1.)  Respondent submitted an answer, along with relevant portions of the state court record.  (Dkts. 15 & 18.) Now, having considered the petition, the answer, and the record submitted, the Court recommends the habeas petition be DENIED and this case DISMISSED.

REPORT AND RECOMMENDATION
PAGE - 1

1

## BACKGROUND

2      The Washington Court of Appeals described the facts underlying petitioner's conviction

3  and his trial as follows:

4          Appellant Bud Fraser shot Colin Cross in the face, killing
        him.  Cross had been living with Fraser's ex-girlfriend, Danielle
5        Sigmond.  The State charged Fraser with first degree murder.

6          Trial began in October 2010.  Sigmond testified that she
        had an on-and-off relationship with Fraser for about three years.  In
7        2009, she began seeing Cross, but she also remained in
        communication with Fraser.  When she moved into Cross's
8        apartment, Fraser was angry.  Sigmond testified that Fraser told her
        he was going to kill her boyfriend, but she did not take the threats
9        seriously.  Another witness testified that he saw Fraser attack
        Cross outside Sigmond's apartment in July 2009.  When Cross
10       went inside the apartment, Fraser tried to kick the door down and
        said Cross "better watch his back" because he was going to be
11       "blasted."

12         Sigmond was a barista in a coffee stand in Everett in
        September 2009.  She testified that she typically arrived before 5
13       a.m. to open up.  Fraser often stopped by early in the morning on
        his way to work, to get coffee and talk to her.  Sigmond said that in
14       the two weeks leading up to the shooting, Fraser pursued her
        aggressively with requests to go out with him.  He stopped at the
15       coffee stand daily, and his calls and text messages became constant
        and repetitive.

16
           Early on September 14, Cross drove Sigmond to the coffee
17       stand in her car and dropped her off.  Sigmond expected Cross to
        come back for a cup of coffee after he parked.  She heard a shot,
18       went outside, and found Cross lying dead next to her car, bleeding
        from his head.  A security camera showed that the shot occurred 78
19       seconds after Cross and Sigmond drove in.

20         Police arrived quickly.  Sigmond identified a yellow car in
        a nearby parking lot as Fraser's.  In the back of the car, police
21       found the weapon, an AK-47 rifle.  A blanket lay on the pavement
        not far from Cross's body.  With the assistance of Fraser's cell
22       phone carrier, police located Fraser in Ellensburg the next day and
        arrested him.  Fraser at first indicated that he was surprised to be
23       detained on suspicion of homicide.  Asked what he knew about the

REPORT AND RECOMMENDATION
PAGE - 2

Cross homicide, Fraser responded, "there's a lot of people who would want to kill Colin Cross."

At trial, Fraser admitted shooting Cross. He claimed the shooting was the unintended result of his reaction to an aggressive move by Cross. Fraser said he was waiting for Sigmond that morning at the coffee stand. He denied any feelings of jealousy; he said he was merely irritated with Sigmund for not answering his calls and text messages. He had never seen Cross drop Sigmond off at work before and wanted to know why Cross was there. He said Cross had threatened him in the past and he feared violence from Cross. He took his rifle and the blanket from the back seat of his car and, without checking the safety, carried it, barrel pointed downward, across the parking lot to where Cross was parked, with the intention of approaching Cross and talking to him. According to Fraser, Cross got out of the car, stood up, and confronted him. Fraser said that he postured to let Cross know he had a gun, hoping to "diffuse the situation," and Cross responded by lunging at him. Fraser testified that he jumped back with this arms raised up, and the gun accidentally went off. Panicked, he put the gun back in his car and hid until his father came and picked him up. Fraser said he then decided to hitchhike to Idaho, and he was on his way there when police arrested him in Ellensburg.

Defense counsel asked the jury to return a verdict on the lesser offense of second degree manslaughter. The jury convicted Fraser of first degree murder, armed with a firearm. The court sentenced him to 30 years.

(Dkt. 15, Ex. 2 at 1-4.)

Petitioner filed an appeal and identified the following assignments of error: (1) Sixth Amendment Confrontation Clause violation through admission of Colin Cross's out-of-court statement to police; (2) Sixth Amendment Confrontation Clause violation through admission of cellular telephone and text message reports; and (3) trial court abuse of discretion in admission of gruesome autopsy photograph that was cumulative and unnecessary. (*Id.*, Ex. 3 at 1-2.) Petitioner also separately alleged ineffective assistance of counsel. (*See id.*, Ex. 2 at 18-19.) The Court of Appeals affirmed the conviction. (*Id.*, Ex. 2.)

REPORT AND RECOMMENDATION
PAGE - 3

Petitioner sought review by the Washington Supreme Court, arguing: (1) error in appellate court finding that Confrontation Clause claim could not be raised for the first time on appeal; (2) the cell phone records report constituted "testimonial" hearsay presenting a significant question of constitutional law; (3) the appellate court erred in finding harmless error in the admission of the victim's testimonial statement; and (4) ineffective assistance of counsel. (*Id.*, Ex. 6 at 1-2.)  The Washington Supreme Court denied review without comment (*id.*, Ex. 8), and the Court of Appeals issued its mandate (*id.*, Ex. 9).

Petitioner filed a personal restraint petition in the Washington Court of Appeals.  (*Id.*, Ex. 10.)  The court dismissed the petition because it did not include any grounds for relief.  (*Id.*, Ex. 11.)  Petitioner did not seek review and the court issued a certificate of finality.  (*Id.*, Ex. 12.)

Petitioner proceeded to file a habeas corpus petition directly in the Washington Supreme Court.  (*Id.*, Ex. 13.)  He argued (1) ineffective assistance of counsel in the failure to suppress and object to phone company records illegally recorded and retained without his consent and testified to by a phone company employee who did not create the records, violating his right of confrontation, incriminating him, and denying him a fair trial; and (2) violation of his Sixth and Fourteenth Amendment rights through trial counsel's destruction of his case file, preventing him from investigating, researching, and submitting evidence to support ineffective assistance of counsel claims in seeking post-conviction relief.  (*Id.* at 3-4.)  The court re-designated the petition as a personal restraint petition and transferred it to the Washington Court of Appeals for initial consideration.  (*Id.*, Ex. 14.)  The Court of Appeals dismissed the petition.  (*Id.*, Ex. 15.)

Petitioner sought review by the Washington Supreme Court.  (*Id.*, Ex. 16.)  He alleged ineffective assistance of counsel for not objecting to an unconstitutional seizure of his phone and text messages, not seeking confrontation of the telephone company employee who compiled the

REPORT AND RECOMMENDATION
PAGE - 4

phone and text message records, not challenging the prosecution's case, destroying his case file, and cumulative error. (*Id.* at 1-3.) The Commissioner of the court denied review, and the court denied petitioner's motion to modify the Commissioner's ruling. (*Id.*, Exs. 17-19.)

DISCUSSION

Petitioner here raises four grounds for relief:

      1.    Mr. Fraser's Sixth Amendment right to confrontation was violated when the Trial Court admitted Mr. Cross's testimonial statement but Mr. Fraser had no opportunity to cross-examine him.

      2.    Admission of cellular telephone and text message reports violated Mr. Fraser's Fifth, Sixth Amendments to his Federal Constitutional right to confrontation.

      3.    Petitioner's constitutionally guaranteed rights were violated under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution due to ineffective assistance of trial counsels failure to suppress and object to the admission and introduction of Sprint Phone Company records i.e., text messages and E-Mails illegally recorded and retained without consent by Petitioner or parties sent to or received from and being testified thereto, in violation of Petitioner's rights under the confrontation clause, used to incriminate Petitioner, resulting in Petitioner being denied his right to a fair trial.

      4.    Petitioner's constitutionally guaranteed rights were violated under the Sixth, and Fourteenth Amendments to the United States Constitution due to ineffective assistance of trial counsel, Royce Ferguson's malicious, intentional, destruction of Petitioner's Attorney/Client File and Materials, by "shredding" to prevent Petitioner from investigating, researching, and submitting evidence to support ineffective assistance of counsel claims/grounds in seeking post conviction relief, resulting in extreme prejudice to the Petitioner.

(Dkt. 1 at 5A-10A.)

    As conceded by respondent, petitioner properly exhausted his state court remedies by fairly presenting them to the Washington Supreme Court as federal claims. The Court, as such,

REPORT AND RECOMMENDATION
PAGE - 5

proceeds to consideration of the merits of petitioner's claims.

A.      Habeas Standard

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  § 2254(d)(1).  In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  § 2254(d)(2).

Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id*. at 412-13.  The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398-1400, 1415 (2011).  If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct,

REPORT AND RECOMMENDATION
PAGE - 6

and the applicant has the burden of rebutting the presumption of correctness with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

B.    Merits Review

1.    Ground One:

Petitioner alleges a violation of his right to confrontation in his first ground for relief. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ."  U.S. Const. amend. VI.   Testimonial hearsay statements are barred under the confrontation clause unless the declarant is unavailable and the defendant had prior opportunity to cross-examine the declarant.  *Crawford v. Washington*, 541 U.S. 36, 59, 68-89 (2004).

The deceased victim in this case had provided a formal statement regarding petitioner to the police.  (*See* Dkt. 15, Ex. 2 at 4.)  The trial court allowed the statement over petitioner's objection, relying on an exception to the right of confrontation.  (*Id*. at 5-6.)  Petitioner alleged a violation of the Confrontation Clause.  The Washington Court of Appeals agreed a Confrontation Clause violation occurred, but found the error harmless:

> There was overwhelming untainted evidence showing that Fraser had given Cross reason to be afraid of him.  Fraser had attacked Cross at Sigmond's apartment.   Sigmond and other witnesses heard Fraser threaten to kill Cross.   Fraser sent threatening text messages to Cross.  Cross could not have escaped knowing that Fraser was a hostile, jealous, and possessive ex-boyfriend who wanted him out of the picture.  The statement by Cross that he feared Fraser was a minor component of the State's evidence.   Cross's state of mind was not mentioned during the State's closing argument.  We see no likelihood that the erroneously admitted statement by Cross influenced the jury in any significant way.
>
> In addition, the State's evidence of premeditation was compelling.  In the days leading up to the shooting, Fraser called

REPORT AND RECOMMENDATION
PAGE - 7

Sigmond constantly. Inconsistent with his denial of a jealous motive, he sent Sigmond hundreds of intense, pleading text messages, repeatedly saying he loved her and demanding that she meet him and talk to him. A message sent on September 8 said, "If you wit [sic] another boy, I swear on our love I will kill him. Please answer me." On September 14, Fraser arrived at the coffee stand unusually early, armed with an assault rifle. Sigmond had not previously seen him carry a gun in his car. As soon as Cross arrived, Fraser got out of the car with the rifle and the blanket. He approached Cross without warning and shot him directly in the face at close range.

The State has borne its burden of showing beyond a reasonable doubt that the exclusion of Cross's statement would not have resulted in a different verdict. We conclude the error was harmless.

(*Id*. at 4-11.)

A habeas petitioner is not entitled to relief where a constitutional error is harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Habeas relief results only where a constitutional error had a "substantial and injurious effect or influence on the verdict," or leaves the reviewing Court "'in grave doubt' as to whether there was such an effect." *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010) (citing *Brecht* and quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). "'Grave doubt' exists in the 'unusual' circumstance where, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id*. (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

A federal court must apply the "'substantial and injurious effect or influence'" standard whether or nor the state court recognized the error and reviewed it under a "'harmless beyond a reasonable doubt'" standard. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (quoting *Brecht*, 507 U.S. 619, and *Chapman v. California*, 386 U.S. 18 (1967)); *accord Pulido*, 629 F.3d at 1012, n.3. With a Confrontation Clause violation, five non-exclusive factors may be considered:

REPORT AND RECOMMENDATION
PAGE - 8

(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case.

*Merolillo v. Yates*, 663 F.3d 444, 455 (9th Cir. 2011) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 684 (1986)).

In this case, there is no showing that or any serious doubt as to whether the admission of the victim's testimonial statement had a substantial and injurious effect or influence on the verdict.  The record included overwhelming untainted evidence showing the victim had reason to fear petitioner, including testimony from multiple witnesses (*see, e.g.*, Dkt. 18, Ex. 24 at 72-74 (testimony of Danielle Sigmond); Ex. 25 at 448-60 (testimony of Samuel Tyler Wene) and 462-63 (testimony of Trevor Cox)), and text messages from petitioner found on the victim's phone (*id.*, Ex. 26 at 547-49).   The record also included compelling evidence of premeditation and evidence contradicting petitioner's testimony he was not motivated by jealousy.  (*See id.*, Ex. 2 at 10-11.)  As the state court concluded, the testimonial statement played a minor role in relation to the prosecution's case as a whole.  Because the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of clearly established federal law, petitioner's first ground for habeas relief should be denied.

2.    <u>Ground Two</u>:

Petitioner's second ground for relief relates to phone and text message records admitted at trial.  He argues a Confrontation Clause violation through the denial of the opportunity to cross-examine the individual who prepared those records.

/ / /

REPORT AND RECOMMENDATION
PAGE - 9

The records at issue consisted of the following:

> Exhibit 1 displays the content of text messages sent and received from Fraser's phone number during the two weeks before the shooting. It includes hundreds of messages sent by Fraser to Sigmond. Exhibit 45 is a report listing the dates and phone numbers for activity on Fraser's phone during the same period of time. It shows 54 calls, as distinct from text messages, to Sigmond's phone.

(Dkt. 15, Ex. 2 at 11-12.) As further described by the Washington Court of Appeals:

> The state used these exhibits to prove that Fraser was obsessed with Sigmond and jealous of Cross. The records were introduced through the testimony of a witness from the cell phone company who explained how the reports were generated from stored data. The witness had created similar reports in the past, but he was not the person who prepared the reports included in the two exhibits. In the trial court, Fraser objected unsuccessfully on the basis that the records, in sum and individually, were more prejudicial than probative. He does not pursue that objection on appeal. Instead, he now argues he had a right to confront the person who created the reports.

(*Id.* at 12.) The state court concluded petitioner forfeited this claim:

> Fraser did not raise the confrontation issue below. He contends the admission of the cell phone records was a manifest constitutional error that can be raised for the first time on appeal under RAP 2.5(a) and State v. Lee, 159 Wn. App. 795, 813-14, 247 P.3d 470 (2011).
>
> This court recently decided that under controlling United States Supreme Court precedent, a failure to assert the confrontation right at or before trial results in the right being forfeited. State v. O'Cain, __ Wn. App. __, 279 P.3d 926 (2012). The rationale of O'Cain is that if a right is forfeited by the defendant, nothing the trial court does or fails to do is a denial of the right, and if there is no denial of a right, there is no error by the trial court, manifest or otherwise, that an appellate court can review. "This rule protects the integrity of judicial proceedings by denying a defendant the opportunity to sit on his rights, bet on the verdict, and then, if the verdict is adverse, gain a retrial by asserting his rights for the first time on appeal." O'Cain, 279 P.3d at 933.

REPORT AND RECOMMENDATION
PAGE - 10

1

2    The circumstances of this case are similar to O'Cain, and
     they illustrate the problem at which the holding of O'Cain is
3    directed. Fraser is arguing that he should have been able to cross-
     examine the person who actually prepared the reports. Had he
4    made this claim at trial, the trial court could have required the State
     either to call the witness who actually prepared the reports or
5    forego the evidence. Fraser may have decided for strategic reasons
     that he preferred to confront a witness who was less familiar with
6    the exhibits. "It would be a strange rule of law that permitted a
     defendant to obtain a new trial under such circumstances."
7    O'Cain, 279 P.3d at 933 n.8.

8    By raising his objection for the first time on appeal, Fraser
     essentially argues that the trial judge should "be placed in the
9    position of *sua sponte* interposing confrontation objections on the
     defendant's behalf – or risk knowingly presiding over a trial
10   headed for apparent reversal on appeal." O'Cain, 279 P.3d at 933.
     As we said in O'Cain, such a state of affairs is obviously
11   untenable. O'Cain, 279 P.3d at 933. Under O'Cain, Fraser waived
     his confrontation clause argument about the cell phone records by
12   failing to object, and we so hold.

13   (*Id*. at 12-14.) The court also later stated:

14   Defense counsel's objection at trial to the admission of Cross's
     statement to the police shows that counsel knew how to make a
15   confrontation clause objection. The judge was entitled to assume
     that the defense had strategic reasons not to object to the testimony
16   of the custodian of the cell phone records on confrontation clause
     grounds. [Such an assumption would have been reinforced by
17   defense counsel's introduction of a different report of text
     messages through the same witness at exhibit 70.]

18

19   (*Id*. at 16 (citation to record omitted).)

20       The state court's conclusion was not contrary to or an unreasonable application of clearly

21   established federal law. The Sixth Amendment right of confrontation may be waived by a failure

22   to object. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313-14 n. 3 (2009) ("The right to

23   confrontation may, of course, be waived, including by failure to object to the offending evidence;

REPORT AND RECOMMENDATION
PAGE - 11

1    and States may adopt procedural rules governing the exercise of such objections.")  Either the

2    criminal defendant or counsel may waive the right, and may do so as a result of trial tactics or

3    strategy.  *Wilson v. Gray*, 345 F.2d 282, 286 (9th Cir. 1965) ("[W]e do not agree that in all cases

4    the waiver of this right must be made by the accused personally rather than by his counsel. It has

5    been consistently held that the accused may waive his right to cross examination and

6    confrontation and that the waiver of this right may be accomplished by the accused's counsel as

7    a matter of trial tactics or strategy.")  *See also Melendez-Diaz*, 557 U.S. at 328 (stating with

8    respect to stipulation of admission of forensic analyst's report on nature of a substance in a drug

9    case:  "It is unlikely that defense counsel will insist on live testimony whose effect will be

10   merely to highlight rather than cast doubt upon the forensic analysis.")

11        Petitioner objected to the admission of the cell phone and text message evidence, but not

12   on the ground that it violated his right to confrontation.  (*See* Dkt. 18, Ex. 26 at 505-08.)  The

13   state court reasonably considered that the failure to raise a Confrontation Clause objection could

14   have resulted from a strategic decision, and reasonably determined petitioner waived this claim.

15        Even if it could be said no waiver occurred, petitioner fails to demonstrate a

16   Confrontation Clause violation.  The Sixth Amendment affords criminal defendants in state court

17   trials a right to confront the witnesses against them.  *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

18   This right ensures reliability by requiring statements under oath, submission to cross-

19   examination, and opportunity for the jury to assess witness credibility.  *California v. Green*, 399

20   U.S. 149, 158 (1970).

21        Testimonial statements – statements made for the purpose of establishing or proving a

22   particular fact – are inadmissible in criminal prosecutions unless the declarant is unavailable and

23   the defendant had a prior opportunity for cross-examination.  *Crawford*, 541 U.S. at 59, 68-89.

REPORT AND RECOMMENDATION
PAGE - 12

The Confrontation Clause does not prohibit non-testimonial statements. *Davis v. Washington*, 547 U.S. 813, 821 (2006). It applies only to "'witnesses' against the accused . . . those who 'bear testimony[,]" *Crawford*, 541 U.S. at 51, and only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis*, 547 U.S. at 821. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id*.

Testimony typically takes the form of "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford*, 541 U.S. at 51 (quoted source omitted). "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id*. As described by the United States Supreme Court, the "core class" of testimonial statements covered by the Confrontation Clause include:

> *ex parte* in-court testimony or its functional equivalent . . . such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id*. at 51-52 (internal quotation marks and citations omitted).

With this understanding of the nature of a testimonial statement, the Supreme Court deemed testimonial statements made to the police during an interrogation and a written statement provided to the police in a non-emergency. *Crawford*, 541 U.S. at 52, and *Davis*, 547 U.S. at 828-29. However, a statement made to "enable police assistance to meet an ongoing emergency," such as during a 911 call, is non-testimonial. *Davis*, 547 U.S. at 828-29.

REPORT AND RECOMMENDATION
PAGE - 13

In *Melendez-Diaz*, 557 U.S. at 308, 311, the Supreme Court addressed "'certificates of analysis'" created as evidence for a criminal proceeding, sworn to before a notary public, and identifying a suspect substance as cocaine.  The Court held the certificates were "quite plainly affidavits" and testimonial for purposes of the Confrontation Clause, and, therefore, entitled a defendant the opportunity to confront the analysts at trial.  *Id*. at 310-11, 328-29.  In *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 2716-17 (2011), the Supreme Court deemed a certified blood-alcohol forensic laboratory report, prepared to assist a police investigation and establish or prove a fact in a criminal proceeding, testimonial in character.  The "surrogate" in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification did not meet the accused's constitutional right to confrontation: "The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist."  *Id*.  at 2709-10.

As stated by the Ninth Circuit Court Appeals:  "*Melendez-Diaz* and *Bullcoming* stand for the proposition that '[a] document created solely for an "evidentiary purpose," . . . made in aid of a police investigation, ranks as testimonial.'"  *United States v. Anekwu*, 695 F.3d 967, 974 (9th Cir. 2012) (quoting *Bullcoming*, 131 S. Ct. at 2717).  However, neither case, nor any other Supreme Court decision, identifies cell phone records or similar documents as testimonial, or supports a right to confront the custodian who originally responded to a law enforcement request for those records.  As explained in *Melendez-Diaz*:  "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."  557 U.S. at 324;

REPORT AND RECOMMENDATION
PAGE - 14

1   *accord United States v. Morales*, 720 F.3d 1194, 1200 (9th Cir. 2013).

2          Petitioner here focuses on the records custodian who testified regarding the cell phone

3   and text message records, without demonstrating the testimonial character of either the records or

4   the testimony proffered.  The records are not properly deemed testimonial based solely on the

5   fact that they were provided to the police.  As stated by the Ninth Circuit, "a business or public

6   record is not 'testimonial' due to 'the mere possibility' that it could be used in a later criminal

7   prosecution."  *Morales*, 720 F.3d at 1200 (citing *United States v. Orozco-Acosta*, 607 F.3d 1156,

8   1164 (9th Cir. 2010)).  "Rather, such records are testimonial only if there is some showing that

9   the primary purpose of the record is for use in litigation."  *Id.*

10         There is no basis for concluding the cell phone and text message records and associated

11  testimony were testimonial and implicated petitioner's rights under the Sixth Amendment.  *See*,

12  *e.g.*, *United States v. Yeley-Davis*, 632 F.3d 673, 679-80 (10th Cir. 2011) (finding neither cell

13  phone records, nor document authenticating those records testimonial; cell phone records were

14  "'created for the administration of [Verizon's] affairs and not for the purpose of establishing or

15  proving some fact at trial'" and the purpose of the authenticating documents "was merely to

16  authenticate the cell phone records – and not to establish or prove some fact at trial") (quoting

17  *Melendez-Diaz*, 557 U.S. at 324)).  *See also Anekwu*, 695 F.3d at 974-76 (following the

18  reasoning in *Yeley-Davis* and finding certifications of business records not testimonial where

19  they were "(1) created at or near the time of the events they purported to establish, by someone

20  with knowledge of those events; (2) kept in the course of regularly conducted business; (3) made

21  as part of that business's regular practice; and (4) true and correct copies.")  Accordingly, even

22  in the absence of a waiver, petitioner's second ground for relief would fail.

23         The state court also rendered alternative conclusions regarding the cell phone and text

REPORT AND RECOMMENDATION
PAGE - 15

message records.  First, assuming a state procedural rule could be interpreted to allow the claim

based on a showing of manifest error, the court found no showing the alleged error was manifest.

(Dkt. 15, Ex. 2 at 14-17.)   The court distinguished a case in which cell phone records

corroborated the testimony of a single eyewitness to a homicide and where the identity of the

murderers was contested:

> Here, unlike in Lee, admission of the phone records proved what other evidence had already established:  Fraser was obsessed with getting Sigmund back, and he was threatening towards Cross.  For example, Fraser has not challenged the admission of exhibit 54, a record of his threatening text messages to Cross's cell phone in early June, 2009.  One message said Fraser was finding out where Cross lived and worked.  Another message told Cross to "gimi bak mi girl n I wont hurt u 2 bad" and warned him to get a "big gun" because "I got bounti out 4 u" and "i got big fam." Fraser added, "She mine n u bes pak that gun whereva u go cuz I will get u or sumbudi I no."

*Id.* at 15-16 (discussing *State v. Lee*, 159 Wn. App. 795, 247 P.3d 470 (2011)).  Noting the

records corroborated the "already abundant evidence" of petitioner's motive, the court concluded

"[n]o error would have manifested itself to the trial court under the circumstances."  *Id.* at 16.

In addition, even assuming a manifest constitutional error, the court found any such error

harmless:

> . . . Fraser contends the cell phone records were of central importance to the State's proof that he acted with premeditated intent.  The State prepared an illustrative summary and timeline showing how Fraser's calls and messages increased in frequency and intensity in early September 2009.  The State used this information at trial and emphasized it in closing argument.
>
> The cell phone records did support the State's argument that Fraser's obsessively jealous and threatening behavior escalated just before the homicide.  But the untainted evidence proved the same point.  And even without the phone records, the evidence showing that Fraser was lying in wait with the gun and blanket was compelling evidence of premeditated intent.  If it was

REPORT AND RECOMMENDATION
PAGE - 16

1    manifest error to admit exhibits 1 and 45, the error was harmless.

2    (Dkt. 15, Ex. 2 at 16-17.)

3    The record in this case included ample other evidence as to petitioner's threatening

4    behavior and the victim's fear, as well as compelling evidence of premeditated intent. *See supra*

5    at 9. Petitioner, for this reason and for the reasons discussed above, does not demonstrate his

6    entitlement to habeas relief in relation to his second ground for relief.

7       3.    Ground Three:

8    In his third ground for relief, petitioner alleges ineffective assistance of counsel for not

9    objecting to and suppressing the cell phone and text message evidence. He maintains counsel

10   should have objected that the evidence violated his right to confrontation, that the records were

11   illegally recorded and retained without his consent, and that the records violated his right against

12   self-incrimination.

13   The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

14   counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts evaluate claims of

15   ineffective assistance of counsel under the two-prong test set forth in *Strickland*. A defendant

16   must prove that (1) counsel's performance fell below an objective standard of reasonableness

17   and (2) a reasonable probability exists that, but for counsel's error, the result of the proceedings

18   would have been different. *Id.* at 687-94.

19   When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

20   deferential. *Id.* at 689. There is a strong presumption that counsel's performance fell within the

21   wide range of reasonably effective assistance. *Id.* "'A fair assessment of attorney performance

22   requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

23   the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

REPORT AND RECOMMENDATION
PAGE - 17

perspective at the time.'"   *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component.  *Id.* at 697.  Furthermore, if both components are to be considered, there is no prescribed order in which to address them.  *Id*.

Where a state court rejected an ineffectiveness claim on the merits the "pivotal question" in a § 2254 proceeding "is whether the state court's application of the *Strickland* standard was unreasonable."   *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct 770, 785 (2011) (citations omitted).  The Court employs a "'doubly deferential'" review, taking a "'highly deferential' look at counsel's performance [pursuant to *Strickland*, and] through the 'deferential lens of 2254(d).'" *Pinholster*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2 and 123 (2009), and *Strickland*, 446 U.S. at 689).  A petitioner "must demonstrate that it was necessarily unreasonable" for the state court to rule as it did.  *Id*.

The Washington Court of Appeals first considered petitioner's ineffective assistance claim as follows:

> At Fraser's trial, both parties admitted exhibits documenting Fraser's cell phone communications with his former girlfriend, Danielle Sigmond.  The exhibits were records provided by Fraser's cell phone service provider, Sprint Communications. The exhibits provided the content of text messages Fraser sent to

REPORT AND RECOMMENDATION
PAGE - 18

Sigmond in the time period preceding the shooting and information about cell phone calls made by Fraser during the same period. Fraser argues that he was denied effective representation of trial counsel because counsel did not object or argue that the evidence should be suppressed on the ground that his text messages and data about his phone calls was "illegally recorded and retained" by Sprint without his consent and in violation of the Washington State Privacy Act, Chapter 9.73 RCW.

. . .

. . . [Fraser] is unable to establish deficient performance or prejudice resulting from counsel's performance.

. . .

Fraser's trial counsel did object to the admission of the State's exhibits on the basis that the prejudice outweighed the probative value of the evidence. Fraser does not explain why that was an unreasonable strategic decision. Counsel's decisions regarding matters of trial strategy or tactics do not constitute ineffective assistance of counsel. State v. Argo, 81 Wn. App. 552, 576, 915 P.2d 1103 (1996). Also, Fraser fails to establish the premise of his argument, that Sprint's collection and retention of his data was illegal under RCW 9.73.030. He provides no analysis of Sprint's actions under RCW 9.73.030, nor does he provide any information about the terms of his agreement with the telephone service provider. And even if he could establish that counsel had a legal basis to raise this objection to the evidence, Fraser cannot establish that the result of his trial would have been different if the evidence was excluded. As this court noted in Fraser's direct appeal, the cell phone records admitted as exhibits merely "corroborated the already abundant evidence of Fraser's motive." No. 66276-7 at 16.

(Dkt. 15, Ex. 15 at 1-4.) The Washington Supreme Court also considered the claim in denying review:

Mr. Fraser first contends that counsel was ineffective in not objecting to admission of text messages and wireless phone records being in violation of the Washington State Privacy Act, Chapter 9.73 RCW. But he fails to show that the wireless provider's collection and retention of contract user data violated

REPORT AND RECOMMENDATION
PAGE - 19

the act.  RCW 9.73.030 makes it unlawful to intercept or record a private communication without first obtaining the consent of all the participants in the communication.  At least one court has concluded that engaging in text messaging indicates the defendant consented to the recording because the nature of the communication is such that the person engaging in the communication would know recording was part of the process.  *See State v. Moscone*, 161 N.H. 355, 364, 13 A.3d 137, 145 (2011).  And, as the acting chief judge observed, service contracts may provide consent for release of the information.  *See, e.g., Freedman v. Am. Online, Inc.*, 412 F. Supp. 2d 174, 183 (D. Conn. 2005) (service agreement indicated that the service provider would release information about subscriber's account to comply with valid legal process).  Also, as noted in Mr. Fraser's direct appeal, "even without the phone records, the evidence showing that Fraser was lying in wait with the gun and blanket was compelling evidence of premeditated intent."  Mr. Fraser does not show that in the absence of counsel's claimed deficient performance there is a reasonable probability that the result of the proceeding would have been different.

Mr. Fraser more broadly asserts that defense counsel was ineffective in failing to move for suppression of the wireless records on various grounds, including lack of probable cause.  Mr. Fraser's bald and conclusory allegations as to this issue cannot be reviewed because they lack evidentiary support.  *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

. . .

Mr. Fraser further claims defense counsel was ineffective in not challenging the testimony of his wireless provider's employee on confrontation grounds.  But on direct appeal the Court of Appeals examined the confrontation issue extensively on the merits and held the introduction of the records was not a manifest constitutional error reviewable for the first time on appeal under RAP 2.5(a)(3), and even if there was an error, it was harmless.  *See Fraser*, 170 Wn. App. at 25-28.  Mr. Fraser does not show that the interests of justice require reconsideration of this issue reformulated as a claim of ineffective assistance.  *See In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).  In any event, the Court of Appeals decision on direct appeal noted a not unreasonable tactical basis for counsel's decision not to object on confrontation grounds:  a potentially better trial tactic was to confront a witness less familiar with the exhibits.  *See Fraser*, 170

REPORT AND RECOMMENDATION
PAGE - 20

1          Wn. App. at 27.

2   (*Id*., Ex. 17 at 3-4.)

3          Petitioner does not show a confrontation clause violation associated with the cell phone

4   and text message evidence.   Petitioner further presents no more than bare and conclusory

5   assertions that his cell phone and text message records were illegally recorded and retained in

6   violation of his rights.   Such allegations do not demonstrate ineffective assistance of counsel.

7   *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not

8   supported by a statement of specific facts do not warrant habeas relief.")

9          Nor does petitioner otherwise show the state court's consideration of this claim was

10  contrary to or an unreasonable application of clearly established federal law.   "Under *Strickland*,

11  counsel's representation must be only objectively reasonable, not flawless or to the highest

12  degree of skill."   *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) (concluding that, while the

13  trial counsel may have conducted "a more thorough and vigorous examination of the alleged rape

14  victim, . . . the state courts' conclusion that his conduct was objectively reasonable is not an

15  incorrect application of Supreme Court precedent or an unreasonable determination of fact

16  sufficient to grant a petition for habeas corpus under section 2254.")   "A reasonable tactical

17  choice . . . is immune from attack under *Strickland*."   *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033

18  (9th Cir. 1997).   *See also Strickland*, 466 U.S. at 690 ("strategic choices made after thorough

19  investigation of law and facts relevant to plausible options are virtually unchallengeable.")

20         Counsel objected to the cell phone and text message evidence based on its prejudicial

21  impact.   (*See* Dkt. 18, Ex. 26 at 505-08.)   There is no showing that this objection or the failure to

22  raise different or additional objections was not an objectively reasonable tactical choice under

23  the circumstances.   An attorney may, for example, reasonably decline to raise an objection in

REPORT AND RECOMMENDATION
PAGE - 21

order to avoid highlighting the incriminating evidence.  *See*, *e.g.*, *Melendez-Diaz*, 557 U.S. at

328 ("It is unlikely that defense counsel will insist on live testimony whose effect will be merely

to highlight rather than cast doubt upon the forensic analysis.")   Or, as suggested by the state

court, petitioner's counsel may have decided the ability to confront a witness less familiar with

the evidence presented a more favorable opportunity for the defense.

Petitioner also fails to show prejudice.  For instance, assuming a successful objection

based on the right to confrontation, petitioner does not indicate how testimony from a different

wireless provider employee would have proved helpful to the defense.  *Cf. Dows*, 211 F.3d at

486 ("Moreover, Dows provides no evidence that this witness would have provided helpful

testimony for the defense - i.e., Dows has not presented an affidavit from this alleged witness.");

*United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989) (showing of prejudice lacking where

petitioner offered no indication as what witnesses would have testified to or how the testimony

might have changed the outcome).  Nor is there any basis for concluding that, had the cell phone

and text message evidence been excluded from trial, the result of the proceeding would have

been different.  Again, the record contained ample other evidence supporting the conviction.  For

this reason, and for the reasons stated above, petitioner's third ground for habeas relief lacks

merit and should be denied.

4.    Ground Four:

In his fourth ground for relief, petitioner takes issue with the destruction of his trial case

file.  He maintains trial counsel maliciously and intentionally shredded the file in order to

prevent him from investigating, researching, and submitting evidence in support of his

ineffective assistance of counsel claims, thereby prejudicing his ability to challenge his

conviction and violating his Sixth and Fourteenth Amendment rights.

REPORT AND RECOMMENDATION
PAGE - 22

The Washington Court of Appeals described a letter from petitioner's counsel stating that the case file "had been shredded for 'privacy purposes," and recommending petitioner "contact appellate counsel to obtain trial materials, such as transcripts." (Dkt. 15, Ex. 15 at 5.) The court explained its rejection of this claim as follows:

> Fraser cites no authority for the position that his attorney was required to preserve the client file after the representation had ended. The letter was written in November 2012, two years after the trial took place and after Fraser's conviction had been affirmed on appeal. Fraser also fails to identify any specific record that was destroyed nor does he explain how he was prejudiced in making any specific claim. Apart from vague and conclusory allegations, Fraser fails to demonstrate prejudice resulting from counsel's failure to preserve and retain his file. See In re Pers. Restraint of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992) (Bare assertions and conclusory allegations do not warrant relief in a personal restraint proceeding).

(*Id.*) The Washington Supreme Court likewise rejected the claim, stating petitioner failed "to show that he was prevented from seeking such records from appellate counsel or that trial counsel destroyed specific records such as to prejudice his ability to seek collateral relief." (*Id.*, Ex. 17 at 4-5.)

As respondent observes, there is no clearly established federal law supporting the existence of a constitutional violation based on the circumstances presented by petitioner in his fourth ground for relief. The destruction of petitioner's case file, two years after the trial and after the conclusion of the direct appeal, does not implicate petitioner's constitutional right to counsel at trial or in his direct appeal. *See generally Martinez v. Court of Appeal of Calif.*, 528 U.S. 152, 159-60 (2000) (the Sixth Amendment right to counsel in a criminal prosecution is limited to "rights that are available in preparation for trial and at the trial itself."), and *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (the right to counsel on appeal is limited to a first appeal as of

REPORT AND RECOMMENDATION
PAGE - 23

right and requires such counsel "to be available to assist in preparing and submitting a brief to the appellate court," and to "play the role of an active advocate[]") (citations omitted).  There is, moreover, no constitutional right to counsel to pursue post-conviction relief in a collateral challenge, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and alleged defects in such proceedings do not give rise to a habeas claim, *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cit. 1989).  To the extent these circumstances could be construed as presenting a violation of some state law or state bar ethical rule, neither type of claim would provide a basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-72 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")  Petitioner's fourth ground for relief is not cognizable on habeas review and should be denied.

C.      Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, the Court concludes that petitioner is not entitled to a COA with respect to his claims.

## CONCLUSION

The Court recommends the habeas petition be DENIED, and this case DISMISSED.  An evidentiary hearing is not required as the record conclusively shows that petitioner is not entitled

REPORT AND RECOMMENDATION
PAGE - 24

to relief.  A proposed Order accompanies this Report and Recommendation.

<u>DEADLINE FOR OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>December 4, 2015</u>**.

DATED this <u>9th</u> day of November, 2015.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 25